# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

THOMAS J. BLAKE,

      Plaintiff,

v.

DANIEL DRINGOLI, C. SIEVERT, JAGLA, and J. KARNER,

      Defendants.

Case No. 21-CV-914-JPS

**ORDER**

   Plaintiff Thomas J. Blake, an inmate confined at Redgranite Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging that the defendants violated his Fourth Amendment constitutional rights during a homicide investigation. ECF No. 1. This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and screens his complaint.

**1. MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

   The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

   On August 9, 2021, the Court ordered Plaintiff to pay an initial partial filing fee of $146.42. ECF No. 5. Plaintiff paid that fee on September 1, 2021. The Court will grant Plaintiff's motion for leave to proceed without

prepaying the filing fee. ECF No. 2. He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

2. **SCREENING THE COMPLAINT**

   2.1 **Federal Screening Standard**

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799

F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

On November 4, 2004, Plaintiff was charged with first-degree intentional homicide for the death of Christina R. ECF No. 1 at 2. The State relied on Plaintiff's confession that he intentionally strangled Christina R. for thirty minutes with the intent to terminate her life. *Id.* Blake argued that the death was not intentional and was instead an accident that occurred during erotic asphyxiation. *Id.* Plaintiff's counsel did not make any attempt to pursue a real defense. *Id.* On August 30, 2005, Plaintiff pled no contest to one count of first-degree intentional homicide. *Id.* at 3. Plaintiff later tried to withdraw his plea because he was coerced into the plea. *Id.* On May 9, 2006, Plaintiff was sentenced to a prison term of natural life with no possibility of extended supervision. *Id.*

After Plaintiff's federal habeas petition was unsuccessful in 2011, Plaintiff pursued research into his legal file seeking to find any form of newly discovered evidence. *Id.* In 2012, Plaintiff's legal file was subject to water damage and had to be destroyed per institutional orders. *Id.* Plaintiff's attempts to conduct research into his file were limited when he was restricted only to his transcripts. *Id.*

In 2016, Plaintiff sought out his "discovery" materials by contacting Winnebago County Circuit Court. *Id.* The clerk of records informed Plaintiff that he would need to contact the police department in the city he was arrested in for his "discovery" materials. *Id.* Plaintiff then contacted the

Neenah Police Department and received a copy of his "discovery" materials in 2017. *Id.* These records included documents new to him and contained only a few documents that he had received during the pre-trial phase of his criminal prosecution. *Id.* The newly discovered documents contained over two-hundred pages of documents, called police narratives, that Plaintiff did not know existed until 2017. *Id.* Upon reading the police narratives, Plaintiff found a series of Fourth Amendment violations that occurred during the warrantless search of his apartment. *Id.* at 4.

Following the discovery of the Neenah police records, Plaintiff contacted the Menasha Police Department for any narratives related to his conviction. *Id.* Plaintiff received narratives from the Menasha Police Department. *Id.* Plaintiff discovered information in these narratives that contradicted the affidavits in support of the search warrant. *Id.*

Plaintiff alleges that the "Scheppf Narrative" shows Fourth Amendment violations. *Id.* at 5. Cynthia, Christina R's mother, contacted the Menasha police on November 14, 2002; Officer Scheppf responded. *Id.* The Scheppf Narrative included information that Cynthia claimed her daughter left a note the morning of November 13, 2004 saying that she was going to Plaintiff's residence. *Id.* Scheppf contacted Plaintiff via telephone on November 14, 2004, with Cynthia present; Plaintiff spoke only with Scheppf during this conversation. *Id.* Plaintiff informed Scheppf that he was in Stevens Point at his brother's home. *Id.* On November 16, 2004, after Plaintiff's arrest, Cynthia provided an eleven-page written statement that did not include the information about her daughter's note. *Id.* at 6.

Plaintiff also alleges that the "Dringoli Narrative" shows Fourth Amendment violations. *Id.* Detective Daniel Dringoli was assigned to the investigation after Christina R's body was discovered on November 15,

2004. *Id.* Dringoli's narrative states that he read the Menasha police report concerning a missing person. *Id.* The narrative states that Dringoli decided to speak with Plaintiff "based on the fact that Christina…had left a note…" *Id.* Dringoli and others arrived at Plaintiff's residence on the evening of November 15, 2004. *Id.* Dringoli was invited into the apartment by Rusty Lucht, and they discussed Plaintiff's location. *Id.* Dringoli asked to search the apartment based on the fact that Christina R. had left the note about visiting Plaintiff. *Id.* Lucht agreed and signed a "consent to search" form. *Id.* The form included only Lucht's full name and address of the apartment unit; Dringoli's signature, the date, and other portions of the form remained blank. *Id.*

During the search, Dringoli immediately picked up an ammunition box; the narrative does not explain specifically where he found the box in the living room. *Id.* Dringoli found several letters addressed to Plaintiff along with a journal—both of which he read. *Id.* at 7. Dringoli's narrative provides he found incriminating evidence in the journal to implicate Plaintiff in Christina R's death. *Id.* Dringoli claimed that he noticed Plaintiff's name on the ammunition box only after reading the journal. *Id.* Dringoli placed the ammunition box along with its contents into evidence at the Neenah police station. *Id.* Dringoli then acquired a search warrant for Plaintiff's residence along with an arrest warrant for Plaintiff. *Id.*

Plaintiff alleges that the affidavit in support of the search warrant shows Fourth Amendment violations. *Id.* Dringoli supplied misleading information in his oral testimony to obtain the search warrant. *Id.* First, he provided that the note left by Christina R. was a factual statement. *Id.* Second, he provided that Cynthia spoke directly to Plaintiff over the phone on November 14, 2004 and that Plaintiff gave Cynthia detailed information

about his name and location. *Id.* Third, Dringoli testified Lucht claimed Plaintiff was in Stevens Point with Plaintiff's brother. *Id.* Fourth, Dringoli testified that Lucht described Plaintiff's physical appearance. *Id.* Fifth, Dringoli testified that Plaintiff and Lucht were the only two residents of the apartment. *Id.* Sixth, Dringoli testified that Lucht provided consent for the officers to search the apartment. *Id.* Seventh, Lucht allegedly stated that Plaintiff authored the journal. *Id.* Additionally, Dringoli omitted two facts that would have prevented the authorization of a search warrant: (1) that Dringoli removed the journal, metal box, and Plaintiff's personal letters from the residence and thereby misled the judicial officer that the journal was still in the residence; and (2) that he initiated the warrantless search of the apartment and misled the judicial officer that a legal resident provided consent for the search. *Id.* at 7–8.

In 2009, Plaintiff filed a federal habeas petition; that petition was dismissed. *See Blake v. Pollard,* No. 09-C-624, 2010 WL 4105459, at *1 (E.D. Wis. Oct. 18, 2010). Plaintiff filed a state habeas petition in 2018. ECF No. 1 at 4. His petition was dismissed, and the Wisconsin Court of Appeals affirmed the dismissal because Plaintiff was aware of the claims in 2004. *Id.* The State claimed that Plaintiff was in possession of the entire discovery prior to his sentencing; Plaintiff maintains he was not in possession of the entire file, however, because his counsel failed to provide him with all documents. *Id.* at 5. Plaintiff petitioned the Wisconsin Supreme Court for review in 2019. *Id.* In October 2020, Plaintiff filed an application with the Seventh Circuit Court of Appeals requesting permission to proceed on a second federal habeas petition. *Id.* The Seventh Circuit denied authorization and dismissed the application because Plaintiff did not identify a new Supreme Court rule of constitutional law, and the "new" evidence he

Page 6 of 11
Case 2:21-cv-00914-JPS   Filed 09/28/22   Page 6 of 11   Document 8

presents did not prove his innocence. *Blake v. Radtke,* No. 20-2945 (7th Cir. Oct. 16, 2020).

Plaintiff maintains that his Fourth Amendment rights were violated. ECF No. 1 at 10. In making this argument, Plaintiff relies on: (1) the plain view doctrine to show that the journal was not in plain view; (2) the privacy approach in *Bond v. U.S.,* 529 U.S. 334 (2000); and (3) application of the fruit-of-the-poisonous-tree doctrine. *Id.* Collectively, Plaintiff alleges these will demonstrate a clear example of unlawful search and seizure. *Id.*

**2.3    Analysis**

The Court first analyzes whether Plaintiff's claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). The United States Supreme Court has held that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005); *see also Heck*, 512 U.S. at 477. The Seventh Circuit has held, however, that *Heck*'s bar does not apply to "'a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence.'" *Mordi v. Zeigler*, 870 F.3d 703, 707 (7th Cir. 2017) (quoting *Muhammad v. Close*, 540 U.S. 749, 751 (2004)). And when the prisoner has been convicted by guilty plea, rather than through a trial, "'the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized.'" *Id.* (quoting *Haring v. Prosise*, 462 U.S. 306, 321, (1983)).

Here, Plaintiff pled no contest to one count of first-degree intentional homicide. Plaintiff contests the conduct of state officials that led to his arrest, state-court criminal prosecution, conviction, and sentence. But he challenges only the alleged illegal search and seizure leading to his arrest. The Court does not have enough information about the homicide case to know whether success on these Fourth Amendment claims would call into question the validity of his homicide conviction. As such, the Court cannot find at this early screening stage that Plaintiff's claims are *Heck* barred.

Even if Plaintiff's claims are not *Heck*-barred, however, Plaintiff has alleged no actual injury. In his complaint, Plaintiff says the injury he must show is that "his apartment was unlawfully search[] and his personal possessions were unlawfully removed from the apartment." ECF No. 1 at 9. *Heck* does not always bar a plaintiff's claim that officers conducted an unlawful search and seizure because the claim may not necessarily imply that the plaintiff's conviction was unlawful; however, "[i]n order to recover compensatory damages … the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury … which … does *not* encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned)." *Heck*, 512 U.S. at 487 n.7.

Regardless of any injury, however, the Court finds that Plaintiff's claims are barred by the statute of limitations. For "§ 1983 claims, a cause of action accrues when the plaintiff knew or should have known that [he] had sustained an injury." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004). A Fourth Amendment claim accrues at the time of the search or seizure. *Wallace v. Kato*, 549 U.S. 384, 396 (2007); *see also Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010) ([A] claim

asserting that a search or seizure violated the fourth amendment … accrues immediately."). The relevant Wisconsin statute of limitations is either six or three years, depending on the accrual date. *See D'aquisto v. Love*, No. 20-C-1034, 2020 WL 5982895, at *1 (E.D. Wis. Oct. 8, 2020) (explaining that in 2018 the Wisconsin legislature changed the statute of limitations under Wis. Stat. § 893.53 from six years to three years).

Here, Plaintiff's alleged Fourth Amendment violations occurred in 2004. Plaintiff knew or should have known that he sustained an injury in 2004 when the violations occurred. Plaintiff did not file this case for nearly two decades until 2021. Plaintiff maintains that his "new" evidence was not discovered until 2017; however, Plaintiff waiting over a decade to obtain the records related to his case does negate the fact that the alleged violations occurred and that he should have known about them sooner. As such, the Court finds that Plaintiff's claims are barred by the statute of limitations and will accordingly be dismissed.

Finally, although courts generally must permit civil plaintiffs at least one opportunity to amend their pleadings, the Court need not do so where the amendment would be futile. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015). Because no amendment can overcome Plaintiff's statute of limitations issue, it would be futile to allow him to amend the complaint.

### 3. CONCLUSION

In sum, Plaintiff's claims cannot proceed because they are barred by the statute of limitations. Because amendment would be futile, the Court will accordingly dismiss this case, with prejudice, for the failure to state a claim upon which relief can be granted.

Page 9 of 11
Case 2:21-cv-00914-JPS   Filed 09/28/22   Page 9 of 11   Document 8

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED with prejudice** under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim;

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. § 1915(g);

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $203.58 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to his trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that a copy of this order be emailed to DLSFedOrdersEastCL@doj.state.wi.us.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of September, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. *See* Fed. R. of App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under limited circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.